AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Washington



In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

## INFORMATION ASSOCIATED WITH ELEVEN FACEBOOK ACCOUNTS

)
)
)
)
)
)

Case No. MJ20-5027

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, attached hereto and incorporated herein by reference.

located in the _____ Northern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B-1, attached hereto and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC § 1073 | Unlawful Flight to Avoid Prosecution |

The application is based on these facts:

See Affidavit of FBI Special Agent Terrance G. Postma, attached hereto and incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Terrance G. Postma, Special Agent

*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 02/14/2020 _____

*Judge's signature*

City and state: Tacoma, Washington

Hon. Theresa L. Fricke United States Magistrate Judge

*Printed name and title*

**AFFIDAVIT**

STATE OF WASHINGTON     )
                        )     ss
COUNTY OF PIERCE        )

I, Terrance G. Postma, being first duly sworn, hereby depose and state as follows:

**BACKGROUND**

1.      I have been employed as a Special Agent of the FBI since June 2002 and am currently assigned to the Seattle Division's Tacoma Resident Agency.  I am responsible for investigations of violent crime, fugitives, and bank robbery.  As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

2.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to search the information described in Attachment A for the purpose of locating and apprehending Santiago Mederos who has a federal arrest warrant issued in the Western District of Washington for a charge of Unlawful Flight to Avoid Prosecution, Title 18, United States Code, Sections 1073 (MJ16-5179) arising from his flight from the Western District of Washington to avoid charges of murder, as described below.  There is also probable cause to search the information described in Attachment A for evidence in the fugitive investigation, as described in Attachment B-1, and for location information, as described in Attachment B-2.

AFFIDAVIT OF TERRANCE POSTMA – 1
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## PURPOSE OF AFFIDAVIT

4.      I make this affidavit in support of an application for a search warrant for information associated with and tracker warrant for the following Facebook accounts ("Subject Accounts"):

      (1)      Facebook user ID 100040501718452 (Subject Account 1), registered under the username Antono Mendoza,

      (2)      Facebook user ID 100036795438133 (Subject Account 2), registered under the username Antony Villa,

      (3)      Facebook user ID 100027212567730 (Subject Account 3), registered under the username Juan Pablo Olvera,

      (4)      Facebook user ID 100043012699881 (Subject Account 4), registered under the username Antony Beltran,

      (5)      Facebook user ID 100034984732363 (Subject Account 5), registered under the username Juan Pablo Olvera,

      (6)      Facebook user ID 100027943187927 (Subject Account 6), registered under the username Olveta Juan Pablo,

      (7)      Facebook user ID 100033232150177 (Subject Account 7), registered under the username Nico Olvera,

      (8)      Facebook user ID 100021247950775 (Subject Account 8), registered under the username Nico Olvera,

      (9)      Facebook user ID 100027500538828 (Subject Account 9), registered under the username Anton Villa,

      (10)      Facebook user ID 100032649540161 (Subject Account 10), registered under the username Anton Villa Bel, and

      (11)      Facebook user ID 100034418213234 (Subject Account 11), registered under the username Maricarmen Olvera.

5.      All of the requested information is stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered in

AFFIDAVIT OF TERRANCE POSTMA – 2
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   Menlo Park, California.  The information to be searched is described in the following

2   paragraphs and in Attachment A.  This affidavit is made in support of an application for a

3   search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require

4   Facebook to disclose to the government records and other information in its possession,

5   pertaining to the subscriber or customer associated with Subject Accounts.  The affidavit

6   also supports a tracker warrant for the same accounts listed in Attachment A.

### PRIOR APPLICATION

8        6.     The Court issued a prior search warrant for Subject Accounts 1 and 2 on

9   February 7, 2020, which the Court granted under MJ20-5016.  A new warrant is

10   necessary because of a scrivener's error for the number for Subject Account 3 in MJ20-

11   5016.  In addition, Subject Accounts 3 through 11 in this affidavit are new accounts that

12   were not included in the prior warrant.

### SUMMARY OF PROBABLE CAUSE

14        7.     In 2010, Santiago Mederos fled from Tacoma to Mexico after the murder

15   of Camille Love and Jose Lucas.  Santiago Mederos has outstanding warrants for the

16   respective murders, and this Court has charged him for violation of Unlawful Flight to

17   Avoid Prosecution, Title 18, United States Code, Sections 1073 on September 30, 2016

18   under Case No. MJ16-5179.

19        8.     As described below, investigation by law enforcement has led to a

20   Mexican phone number that is associated with a WhatsApp account that posted a picture

21   of Santiago Mederos.  The user of that number also has a Facebook account (Subject

22   Account 1), which has shared a machine with Subject Account 2 (both accounts logged

23   onto Facebook from the same device).  Both Subject Account 1 and 2 are registered

24   under aliases of Santiago Mederos.  The remaining accounts are all related to Subject

25   Accounts 1 and 2 and to each other, as they shared machine cookies with the other

26   accounts as described in more detail below.

27

28

AFFIDAVIT OF TERRANCE POSTMA – 3
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1
2

## STATEMENT OF PROBABLE CAUSE
## A. SANTIAGO MEDEROS AND THE LOVE AND LUCAS MURDERS

3     9.    On February 7, 2010, Tacoma Police Department (TPD) officers

4 responded to the 5900 block of Portland Avenue regarding a shooting.  At the scene, TPD

5 officers and detectives discovered that Camile Love was the shooting victim.  Love died

6 from the injuries sustained in the shooting.  Based on interviews of witnesses and

7 informants who admitted to participation in the shooting, the TPD detectives concluded

8 that Santiago Mederos was the prime suspect in Love's murder and that the shooting was

9 a result of a gang turf war.

10     10.    On March 25, 2010, a homicide occurred within the city of Tacoma.  TPD

11 detectives identified the homicide victim as Jose Saul Lucas and identified the prime

12 suspect in his murder as Santiago Mederos.  Based on interviews of two witnesses, TPD

13 detectives concluded that Santiago Mederos, a known member of the Eastside Lokotes

14 Sureños (ELS) gang, and four other ELS gang members went to the residence of a rival

15 gang member, Reynaldo Orozco, to collect money.  When they could not find the rival

16 gang member, they broke into and damaged Orozco's car, which was parked at the

17 residence.  When three individuals, who lived with Orozco, realized that the ELS gang

18 members were vandalizing Orozco's vehicle, they confronted the gang members and a

19 fight ensued.  While attempting to flee the scene, Santiago Mederos and his accomplices

20 fired a single gunshot, which struck and killed one of Orozco's roommates, Jose Saul

21 Lucas.

22     11.    As a result of their initial investigation, TPD detectives obtained an arrest

23 warrant for Santiago Mederos for his involvement in the homicide.  Further investigation,

24 to include interviews with witnesses, friends and family members, revealed that Santiago

25 Mederos is aware that he has a warrant for his arrest and has subsequently gone into

26 hiding.

27
28

1    12.    Ashley Rios, a friend of Santiago Mederos, stated in an interview with

2    TPD detectives that she travelled to Mexico with Santiago Mederos to his Aunt's

3    residence in Guerrero, Mexico, shortly after the Lucas murder.

4    13.    Efforts to date to locate Santiago Mederos in Mexico have been

5    unsuccessful.

6    **B. SUBJECT ACCOUNTS**

7    14.    **Summary of Subject Accounts**.  During the course of this investigation,

8    law enforcement located a Mexican phone number, +52-7341170819, which has been

9    used to contact Mederos family members and has been used for a WhatsApp account

10   with a profile picture of Santiago Mederos.  That same number is associated with a

11   Facebook Account, Subject Account 1.  Other information from Facebook generated by

12   warrants and orders of this Court have revealed a network of other accounts that share

13   "machine cookies" with Subject Account 1 and with each other.  As explained below, a

14   machine cookie identifies the particular machine (phone, computer, or tablet) used to

15   access an account, and a shared cookie indicates that two accounts were accessed on the

16   same machine, which means the users are the same person or someone in close proximity

17   to the other user.  Thus, there is probable cause to believe that information from each of

18   the Subject Accounts contains evidence about the location of Santiago Mederos.

19   15.    In the course of this investigation, law enforcement has reviewed

20   telephone records of members of the Mederos family and records of telephone numbers

21   that are in communication with members of the Mederos family.  In the course of

22   reviewing those records, law enforcement identified a number, +52-7341170819.

23   According to call records, the number ending in 0819 is in communication with

24   individuals who are close to the Mederos family.

25   16.    An online search of publicly available information indicate that the user

26   of the number ending in 0819 has a WhatsApp account under the same telephone

27   number.  The WhatsApp account included a public profile picture of an individual who

28   resembles Santiago Mederos and an unknown adult female and an unknown juvenile

AFFIDAVIT OF TERRANCE POSTMA – 5
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  female. Law enforcement has reviewed the WhatsApp profile picture associated with the
2  number ending in 0819 and observed that the male individual in the WhatsApp profile
3  picture has a tattoo on the right side of his neck and on his right shoulder. These tattoos
4  and the appearance of the individual's face match a photograph of Santiago Mederos that
5  law enforcement obtained from a prior Facebook search warrant return in this
6  investigation.

7       17.    Based on review of records returned to investigators by Facebook, Inc.
8  pursuant to a prior order of this Court, the user of the number ending in 0819 also has a
9  Facebook account registered under the same number ending in 0819 (Subject Account 1).
10  Subject Account 1 is registered under the username "Antono Mendoza," and prior search
11  warrant returns indicate that variations of the name "Antonio," like "Antono," are
12  common aliases for Santiago Mederos.

13       18.    Open source research reveals that the username of Subject Account 2 is
14  "Antony Villa." Facebook records returned to investigators pursuant to an order of this
15  Court revealed that the username for two other Facebook accounts known to have been
16  previously used by Santiago Mederos are "Anthony Villa" and "Antonio Villa," which is
17  based on Mederos's other family name, Villalba.

18       19.    Based on review of records returned to investigators by Facebook, Inc.
19  pursuant to a prior order of this court, Subject Account 1 and Subject Account 2 are
20  linked by machine cookie, which means that two particular accounts have been accessed
21  by the same individual machine (e.g., two Facebook accounts that have been accessed on
22  the same phone). Such a "link" between two accounts indicates that the users are the
23  same person or in close proximity to each other.

24       20.    Open source research reveals that the username of Subject Account 3 is
25  "Juan Pablo Olvera." Open source research reveals that the user of Subject Account 3
26  posted a photo to Subject Account 3 on February 1, 2020 that includes an individual that
27  resembles Santiago Mederos. Review of the photo reveals that an individual in the photo
28  has tattoos on the right side of his neck. The tattoos and the appearance of the

AFFIDAVIT OF TERRANCE POSTMA – 6
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 individual's face match a photograph of Santiago Mederos that law enforcement obtained

2 from a prior Facebook search warrant return in this investigation.

3       21.     Open source research reveals that the user of Subject Account 3 posted a

4 photo to Subject Account 3 on December 2, 2019 that also includes an individual whose

5 face matches a photograph of Santiago Mederos that law enforcement obtained from a

6 prior Facebook search warrant in this investigation.

7       22.     Open source research reveals that the username of Subject Account 4 is

8 "Antony Beltran" and prior search warrant returns indicate that variations of "Antonio,"

9 such as "Antony," are common aliases for Santiago Mederos. "Beltran" is a family name

10 from Santiago Mederos's paternal grandmother, Elena Fresnares Beltran, with whom,

11 according to a confidential human source, Santiago Mederos has previously resided with

12 since fleeing to Mexico.

13       23.     Based on review of records returned to investigators by Facebook, Inc.

14 pursuant to a prior order of this court, Subject Account 2, Subject Account 3, and Subject

15 Account 4 are linked by machine cookie, which means that these accounts have been

16 accessed by the same individual machine. Such a "link" between two accounts indicates

17 that the users are the same person or in close proximity to each other. Based on review of

18 these same records Subject Account 2, Subject Account 3, and Subject Account 4 are also

19 associated with mobile device Type LG-D693n, which means that Subject Account 2,

20 Subject Account 3, and Subject Account 4 have all been accessed by this this particular

21 Mobile Device Type.

22       24.     Open source research reveals that the username of Subject Account 5 is

23 "Juan Pablo Olvera" and that the username of Subject Account 6 is "Olveta Juan Pablo."

24 The usernames of Subject Account 3 and Subject Account 5 are the same name. The

25 username of Subject Account 6 is a variation of the registered names for Subject

26 Accounts 3 and 5. Further, based on review of records returned to investigators by

27 Facebook, Inc. pursuant to a prior order of this Court, Subject Account 3, Subject

28 Account 5, and Subject Account 6 are linked by machine cookie on two separate

AFFIDAVIT OF TERRANCE POSTMA – 7
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   occasions, which means that these accounts have been accessed the same individual

2   machine on two occasions.  Such a "link" between the accounts indicates that the users

3   are the same person or in close proximity to each other.

4        25.     Open source research reveals that the username of Subject Account 7 is

5   "Nico Olvera."  Photos posted to Subject Account 7 are viewable by the public.  On July

6   4, 2019, a photo was posted in Mobile Uploads to Subject Account 7 along with a caption

7   posted in English that states, "Feeling happy with Antony Villa, Claudia Perez, and

8   Rigoberto Olvera."  A viewer can click on each of the three names and will be directed

9   to the Facebook account for that person.  If a user clicks on the name Antony Villa they

10   will be directed to Subject Account 2.  The picture that is posted depicts two adult males,

11   one of which appears to be Santiago Mederos, one adult female, one juvenile male, and

12   two juvenile females standing in front of a pink wall.  A comment posted in Spanish by

13   Subject Account 2 is roughly translated to state "This is always supporting the family in

14   good times the bad and the worst but woe and want to simply support them in their

15   studies."

16        26.     Based on review of records returned to investigators by Facebook, Inc.

17   pursuant to a prior order of this Court, Subject Account 3, Subject Account 6, and Subject

18   Account 7 are linked by machine cookie, which means that these accounts have been

19   accessed by the same individual machine.  Such a "link" between two accounts indicates

20   that the users are the same person or in close proximity to each other.  Review of those

21   same records also reveals that Subject Account 2 and Subject Account 7 exchange

22   messages with each other.

23        27.     Open source research reveals that the username of Subject Account 8 is

24   "Nico Olvera."  A profile picture posted to Subject Account 8 is the same picture posted

25   in Mobile Uploads to Subject Account 7.

26        28.     Based on review of records returned to investigators by Facebook, Inc.

27   pursuant to a prior order of this court, Subject Account 7 and Subject Account 8 are

28   linked by machine cookie, which means that two particular accounts have been accessed

AFFIDAVIT OF TERRANCE POSTMA – 8
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  by the same individual machine.  Such a "link" between two accounts indicates that the

2  users are the same person or in close proximity to each other.  Subject Account 7 and

3  Subject Account 8 are also linked to Subject Account 2 by machine cookie.

4      29.    Open source research reveals that the username of Subject Account 9 is

5  "Anton Villa."  As mentioned, prior search warrant returns indicate that variations of

6  "Antonio," such as "Anton," are common aliases for Santiago Mederos.  Facebook

7  records returned to investigators pursuant to an order of this Court revealed that the

8  username for two other Facebook accounts known to have been previously used by

9  Santiago Mederos are "Anthony Villa" and "Antonio Villa," which is based on

10  Mederos's other family name, Villalba.

11      30.    A profile photo posted to Subject Account 9 is a collage of eight photos

12  within the shape of a heart against a black brick wall.  Two of the photos in the collage

13  include an individual who resembles Santiago Mederos.  Review of those photos reveals

14  that an individual in them has tattoos on the right side of his neck.  The tattoos and the

15  appearance of the individual's face match a photograph of Santiago Mederos that law

16  enforcement obtained from a prior Facebook search warrant return in this investigation.

17  Review of records returned to investigators by Facebook, Inc. pursuant to a prior order of

18  this Court reveals that Subject Account 9 has sent messages to Subject Account 8.

19      31.    Open source research reveals that the username of Subject Account 10 is

20  "Anton Villa Bel," which contains the same username that appears to be an alias with

21  Subject Account 9, along with a variation of the Beltran name used in Subject Account 4.

22  Subject Account 10 has exchanged messages with Subject Account 7 and Subject

23  Account 8.

24      32.    Open source research reveals that the username of Subject Account 11 is

25  "Maricarmen Olvera."  Open source research reveals that on February 8, 2012 the user of

26  Target Account 11 updated their cover photo.  The user of Target Account 2 liked the

27  February 8, 2012, cover photo.  Facebook records returned to investigators pursuant to an

28

AFFIDAVIT OF TERRANCE POSTMA – 9
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 | order of this Court revealed that the account holder of Target Account 11 and Target

2 | Account 4 responded to a text sent to the same phone number.

3 |       33.      Based on review of records returned to investigators by Facebook, Inc.

4 | pursuant to a prior order of this court, Subject Account 3, Subject Account 6, and Subject

5 | Account 7 share machine cookies with Subject Account 11, which means that these

6 | particular accounts have been accessed by the same individual machine as the others.

7 | Such a "link" between the accounts indicates that the users are the same person or in

8 | close proximity to each other.

9 | **C. FACEBOOK INFORMATION STORAGE**

10 |       34.      I am aware from my experience and training, and consultation with other

11 | investigators, of the following information about Facebook:

12 |       35.      Facebook owns and operates a free-access social networking website of

13 | the same name that can be accessed at http://www.facebook.com.  Facebook allows its

14 | users to establish accounts with Facebook, and users can then use their accounts to share

15 | written news, photographs, videos, and other information with other Facebook users, and

16 | sometimes with the public.

17 |       36.      Facebook asks users to provide basic contact and personal identifying

18 | information to Facebook, either during the registration process or thereafter.  This

19 | information may include the user's full name, birth date, gender, contact e-mail

20 | addresses, Facebook passwords, Facebook security questions and answers (for password

21 | retrieval), physical address (including city, state, and zip code), telephone numbers,

22 | screen names, websites, and other personal identifiers.  Facebook also assigns a user

23 | identification number to each account.

24 |       37.      I know from speaking with other law enforcement that "cookies" are

25 | small files placed by a server (such as those used by Facebook) on a device to track the

26 | user and potentially verify a user's authentication status across multiple sites or

27 | webpages.  This cookie could be unique to a particular account (e.g., the Facebook

28 | account) or to a given device (e.g., the particular phone used to access the Facebook

AFFIDAVIT OF TERRANCE POSTMA – 10
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 account). The next time a user visits a particular site or server, the server will ask for

2 certain cookies to see if the server has interacted with that user before.  Cookies can also

3 be used to determine "machine cookie overlap," or multiple accounts that have been

4 accessed by the same individual machine (e.g., two Facebook accounts that have been

5 accessed on the same phone).  The machine cookie overlap thus allows Facebook to track

6 accounts that are "linked" to each other because the same user account (username on a

7 computer) on the same device accessed multiple Facebook accounts.  This can identify

8 either multiple Facebook accounts used by the same person or used by different people

9 sharing the same user account and device.  In either case, the machine cookie overlap

10 means that the users of the linked accounts are the same person or two people in close

11 proximity to each other.

12    38.    Facebook users may join one or more groups or networks to connect and

13 interact with other users who are members of the same group or network.  Facebook

14 assigns a group identification number to each group.  A Facebook user can also connect

15 directly with individual Facebook users by sending each user a "Friend Request."  If the

16 recipient of a "Friend Request" accepts the request, then the two users will become

17 "Friends" for purposes of Facebook and can exchange communications or view

18 information about each other.  Each Facebook user's account includes a list of that user's

19 "Friends" and a "News Feed," which highlights information about the user's "Friends,"

20 such as profile changes, upcoming events, and birthdays.

21    39.    Facebook users can select different levels of privacy for the

22 communications and information associated with their Facebook accounts.  By adjusting

23 these privacy settings, a Facebook user can make information available only to himself or

24 herself, to particular Facebook users, or to anyone with access to the Internet, including

25 people who are not Facebook users.  A Facebook user can also create "lists" of Facebook

26 friends to facilitate the application of these privacy settings.  Facebook accounts also

27 include other account settings that users can adjust to control, for example, the types of

28 notifications they receive from Facebook.

AFFIDAVIT OF TERRANCE POSTMA – 11
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

40.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

41.     Facebook allows users to upload photos and videos.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

42.     Facebook users can exchange private messages on Facebook with other users.  These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook.  These chat communications are stored in the chat history for the account.  Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

AFFIDAVIT OF TERRANCE POSTMA – 12
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

43.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

44.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

45.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

46.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

47.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

48.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

49.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

50.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When

AFFIDAVIT OF TERRANCE POSTMA – 13
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  a Facebook user accesses or uses one of these applications, an update about that the

2  user's access or use of that application may appear on the user's profile page.

3       51.     Some Facebook pages are affiliated with groups of users, rather than one

4  individual user.  Membership in the group is monitored and regulated by the

5  administrator or head of the group, who can invite new members and reject or accept

6  requests by users to enter.  Facebook can identify all users who are currently registered to

7  a particular group and can identify the administrator and/or creator of the group.

8  Facebook uses the term "Group Contact Info" to describe the contact information for the

9  group's creator and/or administrator, as well as a PDF of the current status of the group

10  profile page.

11       52.     Facebook uses the term "Neoprint" to describe an expanded view of a

12  given user profile.  The "Neoprint" for a given user can include the following information

13  from the user's profile:  profile contact information; News Feed information; status

14  updates; links to videos, photographs, articles, and other items; Notes; Wall postings;

15  friend lists, including the friends' Facebook user identification numbers; groups and

16  networks of which the user is a member, including the groups' Facebook group

17  identification numbers; future and past event postings; rejected "Friend" requests;

18  comments; gifts; pokes; tags; and information about the user's access and use of

19  Facebook applications.

20       53.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or

21  IP address.  These logs may contain information about the actions taken by the user ID or

22  IP address on Facebook, including information about the type of action, the date and time

23  of the action, and the user ID and IP address associated with the action.  For example, if a

24  user views a Facebook profile, that user's IP log would reflect the fact that the user

25  viewed the profile, and would show when and from what IP address the user did so.

26       54.     Social networking providers like Facebook typically retain additional

27  information about their users' accounts, such as information about the length of service

28  (including start date), the types of service utilized, and the means and source of any

AFFIDAVIT OF TERRANCE POSTMA – 14
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   payments associated with the service (including any credit card or bank account number).
2   In some cases, Facebook users may communicate directly with Facebook about issues
3   relating to their accounts, such as technical problems, billing inquiries, or complaints
4   from other users.  Social networking providers like Facebook typically retain records
5   about such communications, including records of contacts between the user and the
6   provider's support services, as well as records of any actions taken by the provider or
7   user as a result of the communications.

8       55.      Therefore, the computers of Facebook are likely to contain all the material
9   described above, including stored electronic communications and information concerning
10  subscribers and their use of Facebook, such as account access information, transaction
11  information, and other account information.  I believe such information is likely to help
12  me locate the fugitive described in this affidavit.

13       **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

14      56.      I anticipate executing this warrant under the Electronic Communications
15  Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by
16  using the warrant to require Facebook to disclose to the government copies of the records
17  and other information (including the content of communications) particularly described in
18  Section I of Attachment B-1.  Upon receipt of the information described in Section I of
19  Attachment B-1, government-authorized persons will review that information to locate
20  the items described in Section II of Attachment B-1.  Pursuant to a tracker warrant. based
21  on the same statutory authority, I will also seize any location information as described in
22  Attachment B-2.

23      57.      As indicated in the Motion for Nondisclosure and Motion to Seal that
24  accompany this affidavit, the government requests, pursuant to the preclusion of notice
25  provisions of Title 18, United States Code, Section 2705(b), that Facebook be ordered not
26  to notify any person (including the subscriber or customer to which the materials relate)
27  of the existence of this warrant for such period as the Court deems appropriate.  The
28  government submits that such an order is justified because notification of the existence of

AFFIDAVIT OF TERRANCE POSTMA – 15
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  this Order would seriously jeopardize the ongoing investigation.  Such a disclosure would

2  give the subscriber an opportunity to destroy evidence, change patterns of behavior,

3  notify confederates, or flee or continue his flight from prosecution.

4        58.      It is further respectfully requested that this Court issue an order sealing all

5  papers submitted in support of this application, including the application and search

6  warrant and tracker warrant until such dates as provided in the proposed Order.  I believe

7  that sealing this document is necessary because the items and information to be seized are

8  relevant to an ongoing investigation.  Premature disclosure of the contents of this

9  affidavit and related documents may have a significant and negative impact on the

10  continuing investigation and may severely jeopardize its effectiveness.

11  //

12  //

13  //

AFFIDAVIT OF TERRANCE POSTMA – 16
USAO #2016R01184

**CONCLUSION**

59.     Based on the forgoing, I request that the Court issue the proposed search warrant and tracker warrant.  This Court has jurisdiction to issue the requested warrants because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  *See* 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of these warrants.  Accordingly, by this Affidavit and Search Warrant, I seek authority for the government to search all of the items specified in Section I, Attachment B-1 (attached hereto and incorporated by reference herein) to the Warrant, and specifically to seize all of the data, documents and records that are identified in Section II to that same Attachment and, pursuant to the Tracker Warrant, all location information as described in Attachment B-2.


Terrance G. Postma
Special Agent
Federal Bureau of Investigation


The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on this 14th day of February, 2020.


HON. THERESA L. FRICKE
United States Magistrate Judge

AFFIDAVIT OF TERRANCE POSTMA – 17
USAO #2016R01184

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the following accounts, each identified by Facebook user ID ("Subject Accounts"):

     (1)     Facebook user ID 100040501718452;

     (2)     Facebook user ID 100036795438133;

     (3)     Facebook user ID 100027212567730;

     (4)     Facebook user ID 100043012699881;

     (5)     Facebook user ID 100034984732363;

     (6)     Facebook user ID 100027943187927;

     (7)     Facebook user ID 100033232150177;

     (8)     Facebook user ID 100021247950775;

     (9)     Facebook user ID 100027500538828;

    (10)     Facebook user ID 100032649540161; and

    (11)     Facebook user ID 100034418213234.

for all such information that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California.

ATTACHMENT A-1
PROPERTY TO BE SEARCHED
USAO #2016R01184

    – 1

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B-1**

**Particular Things to be Seized**

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

A.  The following information about the customers or subscribers of the Subject Accounts:

(a)     User Neoprint - all user contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers associated with the current profile information, and all wall postings and messages to and from the user.

(b)     All activity logs for the Subject Accounts and all other documents showing the user's posts and other Facebook activities;

(c)     User photoprint and videos - all photos and videos uploaded, "liked", or tagged by the user, along with all photos uploaded by any user which have the user tagged in them, any associated photos or links to photos in their original format, including all original meta-data or "EXIF" information;

ATTACHMENT B-1
PROPERTY TO BE SEIZED                                         – 1 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

(d)    All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend and family lists, including the friend and family Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)    All other records of communications and messages made or received by the user, including all private messages, chat history, calling history, and pending "Friend" requests;

(f)    All "check ins" and other location information;

(g)    I.P. Logs - all IP logs showing log-in and log-off and intraconnection I.P. activity including I.P. addresses and date/time stamps for account accesses as well as account creation I.P. address, date, and time.  Provide source port information for each I.P. log-in and log-off event for the Subject Accounts;

(h)    All records of the Subject Accounts' usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)    All information about the Facebook pages that each Subject Account is or was a "fan" of;

(j)    User Friends List/Information – provide a full list of all past and present friends for the Subject Accounts, including all messages and postings between accounts and listed friends;

(k)    All records of Facebook searches performed by the Subject Accounts;

(l)    All information about the user's access and use of Facebook Marketplace;

(m)    The types of service utilized by the user;

(n)    The length of service (including start date);

ATTACHMENT B-1
PROPERTY TO BE SEIZED                    – 2 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

(o)     The means and source of payment for such service (including any credit card or bank account number) and billing records;

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the Subject Accounts;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken;

(r)     Names (including subscriber names, Facebook user IDs, and screen names);

(s)     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

(t)     Local and long distance telephone connection records;

(u)     Push Tokens - any unique identifiers that would assist in identifying the device(s) associated with the Subject Accounts, including push notification tokens associated with the Subject Accounts (including Apple Push Notification (APN), Google Cloud Messaging (GCM), Microsoft Push Notification Service (MPNS), Windows Push Notification Service (WNS), Amazon Device Messaging (ADM), and Baidu Cloud Push, phone numbers, IMEI/ESN, serial numbers, instrument numbers), MAC addresses, IP addresses, email addresses, and subscriber information;

(v)     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP" addresses) associated with those sessions along with time, type, machine (including MAC addresses) cookie, city, region, country, device, and browser;

(w)     Facial recognition data;

(x)     Linked accounts;

(y)     Family members associated with the user of each Subject Account;

ATTACHMENT B-1
PROPERTY TO BE SEIZED                    – 3 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

| | | |
|---|---|---|
| 1 | (z) | Work of the user of each Subject Account; |
| 2 | (aa) | Telephone or instrument numbers or identities (including MAC addresses); |
| 3 | (bb) | Other subscriber numbers or identities (including temporarily assigned |
| 4 | | network addresses and registration IP addresses); |
| 5 | (cc) | User Contact Information – all user contact information input by the user |
| 6 | | including name, birthdate, contact email address(es), other related email |
| 7 | | addresses, address, city, state, zip code, all phone numbers, screen name(s), |
| 8 | | and website information, to include basic subscriber information and |
| 9 | | expanded subscriber information; |
| 10 | (dd) | Group Contact Information – a list of the user's currently registered groups; |
| 11 | (ee) | Location Information – all information pertaining to location data for the |
| 12 | | Subject Accounts, including but not limited to geo-location data and all |
| 13 | | other geo-tagging or geo-location related information; |
| 14 | (ff) | Device Information – all information pertaining to devices used to upload |
| 15 | | photos, posts, messages, or updates, including but not limited to Apple |
| 16 | | UDID, mobile phone number, mobile device ID numbers, and all other |
| 17 | | information related to the devices; |
| 18 | (gg) | Poke Information – all information pertaining to "pokes" initiated by or |
| 19 | | received by the Subject Accounts; |
| 20 | (hh) | Private Messages – all information pertaining to any and all private |
| 21 | | messages to include content, call logs, and location information for the |
| 22 | | Subject Accounts; |
| 23 | (ii) | Facebook Messenger – all information pertaining to any and all incoming |
| 24 | | and outgoing Facebook messenger text strings and conversations for the |
| 25 | | Subject Accounts; and |
| 26 | (jj) | All other account information including: any "about you" information, ads, |
| 27 | | apps and websites, calls and messages, comments, events, following and |
| 28 | | followers, friends, groups, likes and reactions, location history, |

ATTACHMENT B-1
PROPERTY TO BE SEIZED                                – 4 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

marketplace, messages, other activity, pages, payment history, photos and videos, posts, profile information, saved items, search history, security and login information, and "your places" information.

B. All records and other information (not including the contents of communications) relating to the Subject Accounts, including:

(a) Records of user activity for each connection activity for each connection made to or from the Subject Accounts, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination of Internet Protocol addresses;

(b) Information about each communication sent or received by the Subject Accounts, including the date and time of the communication, the method of the communication (such as source and destination email addresses, IP addresses, and telephone numbers); and

(c) Records of any Facebook accounts that are linked to the Subject Accounts by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine or device as each Subject Account).

## II.    Information to be seized by the government

All information described above in Section I that relates to the ongoing fugitive investigation involving Santiago Mederos, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Any content including e-mails, messages, texts, photographs (including metadata), videos (including metadata), visual images, documents, spreadsheets, address lists, contact lists or communications of any type which could be used to identify the user and or their location.

(b) Records relating to who created, used, or communicated with the user ID, including records about their identities and whereabouts.

ATTACHMENT B-1
PROPERTY TO BE SEIZED                                    – 5 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1     (c) All subscriber records associated with the Subject Accounts, including

2         name, address, local and long distance telephone connection records, or

3         records of session times and durations, length of service (including start

4         date) and types of service utilized, telephone or instrument number or other

5         subscriber number or identity, including any temporarily assigned network

6         address, and means and source of payment for such service including any

7         credit card or bank account number.

8     (d) Any and all other log records, including IP address captures, associated

9         with the Subject Accounts;

10     (e) Any records of communications between Facebook and any person about

11        issues relating to the account, such as technical problems, billing inquiries,

12        or complaints from other users about any of the Subject Accounts. This is

13        to include records of contacts between the subscriber and the provider's

14        support services, as well as records of any actions taken by the provider or

15        subscriber as a result of the communications.

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B-1
PROPERTY TO BE SEIZED      – 6 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B-2**

**Information to be disclosed by Facebook, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, Facebook is required to disclose the following information to the government for each User ID listed in Attachment A:

  (a)  All location data collected by Facebook for the account, including GPS data and any other physical location information collected by Facebook's location services via the user's mobile phone or other device, on a real-time or near-real time basis.  Facebook is required to provide any such data they collect, regardless of the time of day.

**II.  Information to be seized by the government**

  (a)  All data disclosed by Facebook pursuant to this attachment.  This data shall be made accessible by the provider to the Federal Bureau of Investigations 24/7, day or night, and/or emailed to Special Agent Terrance G. Postma at **tgpostma@fbi.gov**.

**III.  Time for production by provider**

The provider shall begin producing the information required by this attachment within seven (7) days of the date of service of the warrant.

**IV.  Duration of production**

The provider shall produce the information required by this attachment for a period of for forty-five (45) days from the date of issuance of this warrant.

ATTACHMENT B-2
INFORMATION TO BE DISCLOSED
USAO #2016R01184

– 1 –

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS
RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

I, _____, attest, under penalties of perjury

under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the

information contained in this declaration is true and correct. I am employed by

Facebook, and my official title is _____. I am a custodian

of records for Facebook. I state that each of the records attached hereto is the original

record or a true duplicate of the original record in the custody of Facebook, and that I am

the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I

further state that:

a.      all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth, by, or from information transmitted by, a person with

knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business

activity of Facebook; and

c.      such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the

Federal Rules of Evidence.

_____        _____

Date                                              Signature

CERTIFICATION – 1
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800